Please proceed, Counsel. May it please the Court, my name is Harvey P. Sackett and I represent the appellant Karen O'Ryan. I wish to reserve two minutes for rebuttal. All right. Ryan raised two main issues in her briefs. This morning I would like to focus on several aspects of those. First, Ryan submits that Dr. Iwana, the administrative the consultative examiner who saw Ms. Ryan at the request of the agency, his opinion was ignored by the administrative law judge. The administrative law judge wrongly labeled his findings as merely being Ryan's subjective complaints. The administrative law judge stated that Dr. Randhawa's opinion was based more upon her subjective complaints which are not fully supported in the record. However, he doesn't identify with any degree of specificity what he meant by this. That problem aside, Dr. Randhawa's conclusions were the direct result of his mental status examination. Counsel, may I ask you this? What do you make of the prognosis that Dr. Randhawa said where he opined that if she gets psychotherapy, her condition is likely to improve and she would be able to work? How do we fit that into the analysis? I would say this, Judge Rawlinson, that that might be true, but that's prospective. The question would be what does the medical evidence show that we have at this point in time? But if the medical evidence shows that she's likely to improve, is that a disability? Isn't a disability something that is supposed to last for at least 12 months? At that point it might have lasted 12 months, and we don't know at what point she would have improved. So quite frankly I view that as speculative, if nothing more than that. Turning back to the ALJ's analysis of Dr. Randhawa's report, at the time that Dr. Randhawa saw Ms. Ryan, these were his observations from his mental status exam. Her behavior and mannerisms were somewhat odd. She was easily agitated and appeared to be very angry. She was very distraught, edgy, nervous, shaky and difficult to redirect. And her affect was anxious, distraught, nervous, shaky and edgy. These are not subjective complaints. This is the doctor's clinical analysis of his mental condition. His mental status evaluation. As a result of that evaluation, the doctor said that Ryan would not be able to maintain regular attendance in the workplace, complete a normal work day or work week without interruptions from her psychiatric condition, and deal with the usual stressors in a competitive workplace. So getting back to your question, Judge Rawlinson, at that point in time the doctor did not feel that this woman could work. That's very, very clear. Secondly, the administrative law judge's residual functional capacity assessment did not reflect all of the restrictions set forth in the state agency's mental residual functional capacity opinion. There were two opinions from non-examining state agency psychiatrists. They said that Ryan could perform unskilled occupations with little contact with peers and supervisors and no contact with the public. The ALJ's finding is consistent with this. However, he left out a very important portion of their opinion. They went on to state, and he excludes this, that she had moderate impairments in her ability to sustain concentration, persistence and pace, and the ability to compete a regular work week without interruption. As such, the ALJ's finding is incomplete. This is important for another reason. That spilled over into the hypothetical question the ALJ posed to the vocational expert. The hypothetical question did not include that portion of the report. However, when Ryan's former counsel asked the vocational expert to consider those limitations and to consider the limitations from Dr. Rondalla, she changed her opinion and first said that the claimant would not be able to perform any work whatsoever. As such, the ALJ premised his ultimate finding of non-disability on an incomplete hypothetical question, which makes it unreviewable as a matter of law. And unless the panel has any other questions, I'll reserve the balance of my time. All right. Thank you, counsel. Thank you, Your Honors. Good morning. My name is John Kusker, and I represent Michael J. Astrew, the Commissioner of Social Security. I'll begin by noting for the Court the government's position that the administrative law judge's rationale for rejecting Dr. Rowlands, the consultative psychiatric examiner, Ron Howey, I guess, and another doctor, Dr. Crisp, that the ALJ's rationale wasn't disputed in the district court and that this Court shouldn't be considering the matter. The appellant has made no showing of why any exception to the general rule on waiver of issues should apply here. What was the issue in district court, then, that was raised? The first issue that was raised was whether or not the administrative law judge had completed the necessary findings at sequential evaluation, Step 2 and 3, what are called psychiatric review techniques. And the district court found that the ALJ had, indeed, made the requisite findings. And there's citation to that in our brief, and, of course, the district court explains what the rationale for its finding is. Don't we go back? This review process, I think, is kind of convoluted, but don't we go back and look at the ALJ's findings? Isn't that really where the crux of the case is? Certainly, if the Court chooses to look at the ALJ's findings regarding the medical opinions he rejected, the consulting psychiatrist, Dr. Runhauer, and the diagnosis by a later psychiatrist, Dr. Crisp, that the ALJ articulated a rationale. So we have here a question that's a mixed question of law and fact, if you will, that was the ALJ's rationale legally sufficient, and was it supported by substantial evidence? What the ALJ notes in his decision was that he found both conflicts between treating source evidence, the treating source in this instance being Dr. Lake, and the consulting examiner, who saw the claimant once. The ALJ also found that Dr. Runhauer had indeed relied in part on the claimant's subjective complaints. Were those really inconsistent? Dr. Lake was the generalist, and she's usually treating something other than her mental health. And she's always talking about the mental problem, and then they talk about the mental problem, and she subscribes, gives her some medications that are supposed to help with her depression and her this and that. But she wasn't really examining her, the mental conditions as such. And the psychiatrists were. And I didn't really see inconsistencies there. Well, it is true that she's not performing mental status examination, for example, but she is reporting on what the claimant herself was saying about her response to treatment, which at that time was primarily medication, and about the claimant's intentions to go obtain counseling, and also the claimant's statements about what her limitations were. Dr. Runhauer, although he's reporting on the one hand things that are objectively verifiable, his observations of the claimant, for example, her ability to perform calculations, her memory, for example, he's also reporting her subjective symptoms. And it was the ALJ's conclusion that Dr. Runhauer's reliance upon the subjective symptoms was the defect in his conclusion. But when you're looking at mental impairments, you've got to really look at this, what the claimant is saying, the subjective things. It's not like whether you've got a broken leg or not. It's how you feel, how you're reacting. That is indeed part of the process. In this case, however, the ALJ also found that the claimant's statements about her symptoms were, statements in general, were not credible. And there are numerous examples in the record of contradictory statements, notably when the claimant stopped using drugs and some other things as well. But those didn't really relate to her current mental condition. People tend to deny drugs. I mean, that's kind of a natural thing. But when she's ‑‑ I don't think there's any reason to not credit what she's saying about her depression. And certainly her conduct, washing her clothes twice a year would suggest that she's not exactly all together. Well, as one of the ‑‑ I believe it was Dr. Crisp notes, she's living an unrealistic lifestyle. Whether that's a result of mental impairment or something else is not for me to say or to speculate. But Dr. Ronhauer, interestingly, saw the claimant long before ‑‑ well, he saw her before she even began treatment. And in this case, the prognosis that he suggests, that she would improve with some treatment bears consideration. Because the State agency's doctors who reviewed this report concluded that she would indeed respond to treatment and would probably recover in less than 12 months. This is kind of a circular argument because people with these conditions often are not responding to it. So it's part of the disease. Well, certainly the claimant showed some ‑‑ she certainly didn't seek the treatment that was recommended to her. And it was a long time before she got around to seeing Dr. Crisp. There was one other issue, Your Honor. Counsel, before we leave that, don't the records show that she was slowly improving over the course of her treatment, though? That seems to be what Dr. Mogliotti-Blake found, and that's what the ALJ found. The claimant's testimony is otherwise. But the treating physician's notes indicate ‑‑ seem to contradict what the claimant is saying. There was one other point regarding the residual functional capacity that the ALJ found. Opposing counsel contends that there were two residual functional capacity findings by the State agency, and that is incorrect. There is only one. And I'd like to point the Court to this. Just bear with me for a moment. The form is at the transcript page site of 298. It runs through 300. The State agency's actual residual functional capacity is on page 300. It is past Roman numeral III, and it's clearly labeled functional capacity assessment. The earlier pages of this document are titled summary conclusions, and they are check marks. Opposing counsel is incorrect in stating that these are residual functional capacity assessment in and of themselves. So there was no error by the ALJ in not addressing these. These were for ‑‑ this was the doctor's worksheet. The actual residual, mental residual functional capacity assessment on page 300 is signed by both the State agency psychiatrists who reviewed the record. I see that I have about one minute, so I'm going to try and summarize quickly. It is, again, the government's contention that the ALJ correctly evaluated the evidence from non‑treating sources, a consulting examiner and another doctor who saw the claimant on only one occasion, that the ALJ correctly rejected these opinions, that the ALJ's findings were supported by substantial evidence and legally correct. And then, of course, at the conclusion of the hearing, the ALJ proposed a hypothetical question to a vocational expert that was supported by substantial evidence and found, based on the vocational expert's testimony, that there were jobs the claimant could perform that existed in significant numbers and that the claimant was not disabled. Thank you, counsel. Rebuttal. Thank you, Your Honor. Several points. First, going back to Judge Rawlinson's question about improvement. Dr. Randallis saw the claimant in 2000. In 2003, three years later, not six months later, not one year later, but three entire years later, the doctor said that she was extremely anxious, that she was no longer functional, and that she had fallen apart. This is after? CRISP. So I'm responding to the question about her prospectively improving. And the reality is Also evidence, there were doctor's notes that she was slowly continuing to improve. I'd like to speak to those, Judge Rawlinson. Any improvement that's noted was, number one, it was episodic, and the improvement was never related to a comment by any physician that said she has improved and she can now consider going back to work. So improvement might have meant that she went to the grocery store one time more often per month, that she may have gotten out of her room, that maybe medications like Effexor had slightly diminished her symptoms. So if we're talking about the improvement, that's the improvement that she experienced. But was the I.J. entitled to rely on that? I mean, there could be several different interpretations, but if the I.J. chooses one interpretation, can we Your Honor, excuse me, it's an unrealistic conclusion, because the ability to work is working eight hours a day, five days a week. Improvement in and of itself doesn't equate to the ability to work. So I would disagree with that. The second point, as far as Ms. Ryan raising for the first time before this Court issues about the evidence in general, that's simply not true. As opposing counsel said, we're talking about, to use his term, the ALJ's extensive record and reasoned it in his ultimate decision. I may have relabeled my argument, but the reality is it still comes down to the accuracy of the ALJ's interpretation of the medical evidence. The ALJ did say that she was limited as a result of severe anxiety and depression, so he did not totally discount the medical evidence. He may not have totally discounted it, but the reality is, Your Honor, that he only took portions of it. If the ALJ wanted to make a full evaluation, he would have said to the vocational expert, please also consider a moderate restriction in pace, persistence and concentration. He didn't do that. That's why his hypothetical and his ultimate result constitute reversal. One of the doctors indicated that there was a moderate restriction in pace and persistence and concentration. Dr. Rondalla did that, as did Dr. Crisp. Insofar as what her treating physicians said. Who is that in the record? Dr. Rondalla's report begins on page 50 of the excerpt and runs through page 54. Where is the specific reference to moderate limitation of persistence and pace? Actually, his restrictions are greater than that. He said she couldn't work at all. No, but the form where they have the limitations checked, where is that for Dr. Rondalla? And Dr. Crisp, where they check those moderate limitations that you referenced? He didn't write, he wrote a narrative report. He didn't use a checkbox form. Dr. Crisp, the state agency evaluator, was the one who used the form. Okay. That's why I was asking you, where in the record was that specific limitation referenced? I have that down at page 104 and 105. For Dr. Crisp? Yes, Your Honor. Okay. And there's one more point that requires correction. This Court in Andrews said that you do use those 20 entries on the checkbox form, that that is the mental RFC. Counsel's statement is contrary to the Court's holding in Andrews. It's not simply the last paragraph where they write a short narrative. The 20 boxes must be considered. I don't see those boxes at 104 and 105 of the excerpts of record for Dr. Crisp. It'll take me a moment, Your Honor. I'm sorry. Maybe 106 is where you're talking about impairment criteria? I don't know. Dr. Crisp, his report, again, is on, it's on 104 and 105 of the excerpts, but he didn't fill out a checkbox. Okay. The only checkbox is from the non-examining state agency psychiatrist. That's what I thought. I apologize for that. Thank you. All right. Thank you to both counsel. The case, as argued, is submitted for a decision by the Court. This Court is in recess until 9.30 a.m. tomorrow morning. Thank you.
judges: Fletcher, Canby, Rawlinson